IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| RHONDA DUNSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 7:17-cv-00001-BP |
| | § | |
| NANCY A. BERRYHILL, | § | |
| Acting Commissioner of the Social | § | |
| Security Administration, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND OPINION

Plaintiff Rhonda Dunson ("Dunson") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for disability insurance benefits ("DIB") Title XVI of the Social Security Act ("SSA"). ECF No. 1. After considering the pleadings, briefs, and the administrative record, the Court **AFFIRMS** the Commissioner's decision.

### I. STATEMENT OF THE CASE

Dunson filed an application for DIB on April 10, 2013, alleging that her disability began on March 20, 2012. (Transcript ("Tr.")12). The Commissioner denied her claim initially on June 20, 2013, and denied it again on reconsideration on November 3, 2013. (Plaintiff's Brief ("Pl.'s Br.") 6). Dunson requested a hearing, which was held on February 18, 2015, before Administrative Law Judge ("ALJ") Kenton W. Fulton, with Dunson and her non-attorney representative, Roger Owen, also present. *Id.* The ALJ issued his decision on May 7, 2015, finding that Dunson was not disabled. (Tr. 26).

Specifically, the ALJ employed the statutory five-step analysis and established during step one that Dunson had not engaged in substantial gainful activity since April 10, 2013, the alleged disability onset date. (Tr. 14). At step two, the ALJ determined that Dunson had the severe impairments of bipolar I disorder, anxiety disorder, and seizure disorder. *Id*. At step three, the ALJ found that Dunson's impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. Pt. 404(p). (Tr. 14–16). In particular, the ALJ concluded that Dunson retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with certain limitations. (Tr. 16). At step four, the ALJ found that Dunson had no past relevant work. (Tr. 24). At step five, the ALJ found that Dunson was capable of performing other jobs existing in significant numbers in the national economy. (Tr. 25). Accordingly, the ALJ found that Dunson was not under a disability under the SSA.

The Appeals Council denied review on March 7, 2017. (Tr. 1). Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II.     FACTUAL BACKGROUND

According to Dunson's pleadings, testimony at the administrative hearing, and the administrative record, she was fifty-one years old on the alleged disability onset date, and fifty-four years old at the time of the administrative hearing. (Pl's Br. at 2); (Tr. 12). She has a high school education. (Tr. 22). Dunson has no past relevant work experience. (*Id.*). Dunson asserts that her impairments render her disabled under the SSA.

### III. STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a "medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months" that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means work activity involving the use of significant physical or mental abilities for pay or profit. *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see Stone v. Heckler*, 752 F.2d 1099, 1100–03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to her past relevant work. 20 C.F.R. § 404.1520(e). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, age, education, and past work experience. *Crowley v. Apfel*, 197 F.3d 197, 197–98 (5th Cir. 1999); 20 C.F.R. § 404.1520(f). "The claimant bears the burden of showing that [she] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy

that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC—"the most [a claimant] can still do despite [her] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1).

The Court's decision is limited to a determination of whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Audler*, 501 F.3d at 447; *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if evidence is present. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Harris*, 209 F.3d at 417. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)).

## IV. ANALYSIS

Dunson raises three issues on appeal. She claims (1) that the ALJ's RCF determination is not supported by substantial evidence; (2) that the ALJ did not properly consider her impairments in concentration, persistence, or pace in the RFC finding and in the hypothetical question to the vocational expert; and (3) that the vocational expert testimony does not support the ALJ's step five determination. *See* (Pl.'s Br.).

4

## A. Substantial Evidence Supports the ALJ's RFC Determination.

Dunson first argues that the ALJ's findings that she had no exertional limitations and could perform the demands of medium exertional work are not supported by substantial evidence. (Pl.'s Br. at 8). In particular, Dunson contends that the ALJ failed to properly incorporate her obesity and seizure disorders in making his RFC determination. (Pl.'s Br. at 9–10).

### i. Obesity Disorder

With respect to her obesity disorder, Dunson argues that the ALJ did not consider the "ample evidence of record" that Dunson's "obesity was an issue in the case that needed to be explored" given the fact that the ALJ acknowledged some medical evidence of Dunson's weight and Body Mass Index ("BMI"). (Pl.'s Br. at 10). Dunson contends that the ALJ had a duty to conduct an evaluation of the possible functional impact of her obesity based on the evidence in the record. *Id*. In response, the Commissioner argues that the ALJ took note of Dunson's weight, weight gain, and BMI, but that Dunson never alleged that obesity was a severe impairment to be considered for disability benefits. ECF No. 23 at 17–20. Thus, the ALJ's RFC at step two determined that Dunson's severe impairments were limited to bipolar I, anxiety, and seizure disorders. (Tr. 14).

When a claimant does not raise the claim of obesity in her disability application, the ALJ is under no obligation to consider whether the claimant's obesity affects her disability claim. *See Quintanilla v. Astrue,* 2013 WL 4046371, at *12 (W.D. Tex. Aug. 8, 2013) (citing *Beck,* 205 F. Beck v. Barnhart,* 205 F. App'x 207, 212 n.3 (5th Cir. 2006) (noting that while the ALJ did consider the effect of obesity on the plaintiff's functional limitations, the ALJ was never under any obligation to do so because Plaintiff never alleged that her BMI of 36 caused any specific functional limitations that would render her disabled)).When a claimant does not allege an

impairment that would restrict her functional capacity and the case record does not suggest such a restriction, "the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity." S.S.R. 96–8p, at *3.

Here, Dunson argues that under the criteria set forth in the National Institutes of Health guidelines, her BMI would qualify her as having obesity disorder. (Pl.'s Br. at 9). Dunson asserts that the ALJ failed to address the impact of her obesity or its effect on her ability to work and, therefore, the ALJ did not comply with relevant legal standards. *Id.* at 10. The Commissioner argues that Dunson did not raise obesity or any physical impairments as medically determinable impairments or disabling conditions in her application for disability benefits, nor did she allege any functional limitations due to obesity in her applications. ECF No. 23 at 17–20. The Commissioner thus contends Dunson did not put the issue of any alleged limitations resulting from obesity before the ALJ and, consequently, the ALJ was under no obligation to consider a condition never alleged to be disabling or functionally limiting. *Id.* at 10. Furthermore, as required under S.S.R. 96–8p, the Commissioner contends that there is no evidence in the record to indicate that Dunson's weight caused her any functional limitations. *Id.* The Court agrees. It is undisputed that Dunson did not allege obesity as a severe impairment in her application or documents submitted with the application, and thus, in order for obesity to be considered a limitation it must be supported in the case record. The Court finds that while the ALJ considered a physical evaluation of Dunson that found that she is sixty-one inches tall, weighs 171 pounds, and has a BMI of 32.3—that information alone does not render her disabled. (Tr. 20); *see Vansa v. Astrue,* 423 F. App'x 381, 383 (5th Cir. 2011) (finding that the claimant's subjective complaints about the effects of her obesity did not render her disabled).

Furthermore, even though the ALJ was under no obligation to consider Dunson's obesity under S.S.R. 96–8p, his RFC was based on medical records and opinions that evaluated Dunson's functional capacity. The ALJ gave partial weight to various medical opinions concerning Dunson's impairments, but no medical source ever diagnosed Dunson with obesity or identified Dunson's alleged obesity as a chronic problem. *See Brown v. Astrue,* No. 3:08–cv–0255–D, 2009 WL 64117, at *4 (N.D. Tex. Jan. 12, 2009) ("Although the ALJ did not explicitly articulate or rely on any cumulative effects of [the claimant's] obesity, the record indicates that her obesity was factored into the RFC determination."). As Dunson contends, several doctors—Dr. Morris, Dr. Evans, Dr. Solomon—recorded her height and weight in her medical records, but only Dr. Morris actually noted that Dunson was "obese." (Tr. 379.) Importantly, the ALJ relied upon Dr. Morris's report when rendering his RFC, meaning that he did consider Dunson's obesity when he evaluated her disability status. (*Id.* at 18–19).

In rendering his RFC determination, the ALJ considered all of Dunson's symptoms to the extent they were consistent with the evidence in the record. In fact, at the hearing, the ALJ specifically asked Dunson her height, weight, whether she feels like her weight is in the normal range, and how much weight she had gained. (Tr. 73). Importantly, neither Dunson nor her counsel mentioned Dunson's obesity at the hearing. Thus, although the ALJ was not required to consider Dunson's obesity under S.S.R. 96–8p, substantial evidence supports the conclusion that the ALJ properly considered Dunson's weight and potential limitations in determining his RFC. *See Brown v. Astrue,* 2009 WL 64117, at *4 (N.D. Tex. Jan. 12, 2009) (Fitzwater, J.) (finding that an ALJ does not need to "explicitly articulate or rely on any cumulative effects of a [claimant's] obesity, [if] the record indicates that [her] obesity was factored into the RFC determination.").

Importantly, even if the ALJ erred by failing to discuss independently the effect of Dunson's obesity as related to her other impairments, she has not shown that she was prejudiced as a result. *Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir. 2002)("[A] showing that the claimant was prejudiced by the agency's failure to follow a particular rule before such a failure will be permitted to serve as the basis for relief from an ALJ's decision."). As there were no opinions from any medical sources concluding that Dunson had any limitations specifically due to her weight, or any evidence or testimony that her weight exacerbated her other impairments, and as Dunson has not provided evidence to show either that additional limitations were warranted due to her weight, the Court cannot find any prejudice arising from the ALJ's failure to include an evaluation of obesity in his decision. Accordingly, the ALJ did not commit reversible error when he failed to explicitly address Dunson's obesity.

  ii. *Seizure Disorder*

Next, Dunson argues that the ALJ failed to fully and fairly develop the record concerning her seizure disorder. (Pl.'s Br. at 10). Specifically, Dunson contends that the ALJ failed to obtain any updated report of Dunson's seizure disorder and did not adequately question her regarding the severity of her seizures. *Id.* According to Dunson, the ALJ was under an obligation to further develop the record because the ALJ knew that the latest report on Dunson's seizure disorder was from 2013, and yet he failed to ask Dunson the necessary questions to make an informed decision on her RFC. *Id.* At her hearing, the ALJ asked Dunson "has [sic] the doctors told you what kind of seizures you have?" and Dunson's representative then asked her, "is there any other medical issue[s] or anything we haven't asked you about that you feel is important about your case?," to which Dunson replied, "No." (Tr. 61, 87). The ALJ did not ask Dunson the frequency of her seizures.

Both parties cite the Fifth Circuit's decision in *Sun v. Colvin* as support. Dunson argues that under *Sun*, the ALJ did not properly question Dunson at the hearing to gather the "information necessary to make a disability determination." (Pl.'s Br. 11) (citing *Sun v. Colvin*, 793 F.3d 502, 510 (5th Cir. 2015)). The Commissioner argues that the *Sun* holding does not require the ALJ to search for medical records that belong to the claimant before reaching a decision and that the ALJ's questioning in the case satisfies the Fifth Circuit's decision. ECF No. 23 at 11–12.

In *Sun*, the Fifth Circuit held that the ALJ had a duty to fully and fairly develop the facts, but specifically did "not endorse [the] understanding of that duty as requiring the ALJ to obtain all of a claimant's medical records before reaching a decision. . . . [T]he ALJ's duty [is] one of developing "all relevant facts," not collecting all existing records. *Sun v. Colvin*, 793 F.3d 502, 509 (5th Cir. 2015); *but see Kane v. Heckler,* 731 F.2d 1216, 1218–20 (5th Cir.1984) (finding that the ALJ failed to adequately develop the facts and record where the ALJ held a five-minute hearing and asked "only one perfunctory question about [the claimant's] subjective complaints" before denying her claim, despite the existence of objective medical-record evidence that supported those complaints).

In this case, the ALJ questioned Dunson about her daily activities and limitations, when she had her last seizure, how many seizures she had a year, if it was difficult for her to quantify the number of seizures she has, and how long the effects of her seizures lasted. (Tr. 77–78). The Court finds that the ALJ's questioning and development of the record satisfies the Fifth Circuit's decision in *Sun*. Similar to the administrative hearing reviewed in *Sun*, the ALJ here asked Dunson questions about her physical capabilities and limitations as well as her daily routine. *Id.*; *Sun*, 793 F.3d at 506. Furthermore, Dunson has not shown how she was prejudiced by the alleged failure to further develop the record or request additional information at the hearing. Reversal for such a

9

failure is warranted only when the claimant "shows prejudice from the ALJ's failure to request additional information." *Sun*, 793 F.3d at 509 (citing *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012)). To show prejudice, the claimant must show "that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Jones*, 691 F.3d 735 n.8. Although the record contains several references to Dunson's seizure disorder, Dunson has not shown any additional evidence that might have resulted in a different decision by the ALJ. Thus, reversal is not warranted on this ground.

Dunson also argues that the ALJ erroneously gave partial weight to Dr. Solomon's and Dr. Evans's medical opinions regarding her seizures, but gave significant weight to the State Agency Medical Consultant ("SAMC") reports. *Id.* at 12. Dunson argues that the SAMC reports were not based on complete records, including "Dunson's testimony and her report that she would have to sleep for 2 hours after a seizure" and other medical records that addressed Dunson's seizure disorder. *Id.* Dunson also contends that the ALJ erred in finding that Dr. Solomon's assessment supported his finding of no exertional limitations. *Id.* at 13. In making his determination, the ALJ considered Dr. Solomon's report that "in all probability" Dunson's seizures would continue in the future, and that her seizures could be "frequent." (Tr. 21, 390). Dunson argues that evidence in the record made it necessary for the ALJ to further develop the record to properly consider Dunson's grand mal seizures. (Pl.'s Br. at 14).

Under the applicable Listings, grand mal seizures are found to be disabling when the seizures are supported by detailed documentation of a typical seizure pattern, including all associated phenomena, occurring more frequently than once a month in spite of at least three months of prescribed treatment. 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 11.02. Medical Listing 11.02 places the burden of proof with the claimant to provide and identify medical signs and

laboratory findings that support all criteria of a listed impairment. *Zayas v. Commissioner, SSA*, No. 4:16-cv-00230-CAN, 2017 WL 4270043, at *5 (E.D. Tex. Sept. 26, 2017) (citing *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990)).

Here, while there is no question Dunson suffered from seizures which limited her ability to perform work, she did not carry her burden in showing that such seizures occurred more frequently than once a month, and thus substantial evidence supports the ALJ's finding that Dunson did not meet Medical Listing 11.02. Dunson relies on her own statements that she experienced seizures up to two or three times a month. (Tr. 384). The record contains no evidence to corroborate her allegations of the frequency of her seizures. Although the ALJ noted several times Dunson failed to show for her appointments related to her anxiety, bipolar, and seizure disorders, the ALJ also noted that medical records evidence Dunson's positive response to medication compliance. The administrative record as a whole illustrates that the ALJ's RFC determination is supported by substantial evidence. Accordingly, reversal is not warranted on this ground, as the ALJ properly considered Dunson's impairments in rendering his RFC decision.

## B. The ALJ Properly Considered Dunson's Moderate Deficiencies in Concentration, Persistence, or Pace in his RFC and in His Hypothetical Question to the VE.

Dunson argues that the ALJ erred in his RFC determination because he failed to properly consider Dunson's moderate deficiencies in concentration, persistence, or pace. (Pl.'s Br. at 14). Specifically, Dunson contends that the ALJ's RFC findings and the hypothetical question he asked the VE solely mentioned that Dunson was limited to "simple tasks and instructions only." *Id*. According to Dunson, the ALJ did not consider her moderate difficulties in the area of concentration, persistence or pace because such limitations were never mentioned in his RFC nor "reasonably incorporated" in the ALJ's hypothetical question the VE. *Id.*

"The hypothetical question that an ALJ poses to a VE need only incorporate the disabilities that the ALJ recognizes." *Gardner v. Massanari*, 264 F.3d 1140, 2001 WL 822457, at *2 (5th Cir. 2001) (citing *Bowling*, 36 F.3d at 435).

> If the ALJ's hypothetical example omits a recognized limitation but "the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)," there is no reversible error.

*Id.* (quoting *Bowling*, 36 F.3d at 436); *see also Monroe v. Shalala*, 55 F.3d 633, 1995 WL 313965, at*7 (5th Cir. 1995) ("If the claimant is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions, there is no reversible error."); *but see Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001) (holding that an incomplete hypothetical is not automatically saved solely because a claimant fails to point out its deficiencies at the hearing).

Dunson relies heavily on Seventh Circuit cases to argue that omitting the terms "concentration, persistence, or pace" is error unless "it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." (Pl.'s Br. 22 at 15) (citing *Simila v. Astrue*, 573 F.3d 503, 522 (7th Cir. 2009)). In response, the Commissioner argues that such a strict incorporation of the terms "concentration, persistence, or pace" is not required in the Fifth Circuit. ECF No. 23 at 18. The Court agrees. The Fifth Circuit has held that an RFC assessment that reasonably incorporates a claimant's limitations is sufficient to uphold an RFC determination. *Herrera v. Comm'r of Soc. Sec.,* 406 F. App'x 899, 904 (5th Cir. 2010) (per curiam) (finding that an ALJ's determination that a claimant "would be able to understand, remember, and carry out routine step instructions and respond appropriately to

supervisors and coworkers in jobs that do not require independent decision making" adequately accommodated the claimant's moderate limitation in concentration, persistence, and pace); *Bordelon v. Astrue*, 281 Fed. App'x 418, 422–423 (5th Cir. 2008) (per curiam) (rejecting other circuit's reasoning regarding what is required to reasonably incorporate a finding of moderate difficulties in maintaining concentration, persistence, and pace, into an RFC).

In his RFC, the ALJ considered Dunson's seizure questionnaire, her testimony regarding her mental impairments and limitations in daily activities, psychiatric evaluations from various doctors, and other various medical records. (Tr. 16–24). Importantly, the ALJ noted that "the claimant's statements concerning intensity, persistence and limiting effects" of her symptoms were "not entirely credible" based on the inconsistent record. (Tr. 18). With regard to the ALJ's hypothetical question to the VE, the ALJ asked whether an individual who would be "restricted to simple tasks and instructions only and no more than occasional interaction with coworkers, supervisors, and the public" in addition to other limitations would be able to perform work. (Tr. 88). While the ALJ did not specifically state that Dunson had moderate limitations in concentration, persistence, and pace, he was only required to reasonably incorporate that limitation in his hypothetical. *Barr v. Astrue*, No. 3:11-cv-1349-BF, 2012 WL 2358307, at*4–5 (N.D. Tex. June 21, 2012) (concluding that a mental RFC limiting the plaintiff to "simple, routine tasks" was supported by substantial evidence even though the plaintiff had a moderate limitation in concentration, persistence, and pace); *Acosta v. Astrue*, 865 F. Supp. 2d 767, 790 (W.D. Tex. 2012) (finding an RFC assessment that found the plaintiff could perform "the full range of medium work" despite her mild limitation in concentration, persistence, and pace was sufficient).

Furthermore, Dunson does not argue that she was not afforded the opportunity to correct any alleged deficiencies in the hypothetical question to the VE. Moreover, "the limitations

identified in the 'paragraph B' . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4. Thus, the ALJ did not err in his hypothetical question to the VE. *See Martinez v. Chater*, 70 F.3d 1269, 1995 WL 696853, *4 (5th Cir. 1995) (citation omitted) (although certain limitations, like those regarding concentration, persistence, or pace, may be caused by a claimant's disabilities, they are not in themselves separate disabilities required to be included in an ALJ's hypothetical question to the VE). Reversal is not warranted on this ground.

**C. The ALJ's Step-Five Determination Was Properly Based on the Dictionary of Occupational Titles.**

Dunson also challenges the ALJ's step-five determination on the grounds that the ALJ relied on the VE, who used the Dictionary of Occupational Titles ("DOT") to determine that jobs for Dunson existed in the national economy. (Pl.'s Br. 17). Dunson argues that the DOT is outdated and O*NET, the Department of Labor's currently used source for occupational information, shows that the jobs identified by the VE have training requirements that are greater than the limitations the ALJ assessed for Dunson. *Id.* at 17–20.

Whether the DOT is outdated is not a determination this Court can make. The Regulations explicitly allow the ALJ to use the DOT. *See* 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). Use of the DOT is widespread in Social Security cases in all circuits of the federal judiciary. *See Donahue v. Barnhart*, 279 F.3d 441, 445 (7th Cir. 2002) (collecting the positions of the circuit courts on the amount of authority accorded to the DOT against contrary VE testimony); *Hernandez v. Astrue*, No. A-06-CA-416 LY, 2007 WL 1746896, at *3 (W.D. Tex. June 15, 2007) (referring to the DOT as "the standard reference guide"); *Gillespie v. Astrue*, No. 1:13-CV-00219, 2014 WL 1168872, at *11 (W.D. La. Mar. 21, 2014) ("VEs typically use the Dictionary of Occupational Titles published by the Department of Labor, the Standard Occupational Classification system published

by the Department of Labor, and census reports published by the Bureau of Census. . . ."). "O*Net has not been designated as an acceptable source under Social Security Regulations, and the court is not at liberty to substitute its judgment for those regulations." *New v. Comm'r of SSA*, Civ. A. No. 4:13-CV-0013-SAA, 2014 WL 7361602, at *9 (N.D. Miss. Dec. 23, 2014). The Department of Labor does not enforce the Social Security program. *Id.*

Dunson argues that O*Net shows that the three jobs selected by ALJ have greater training requirements than she was capable of, according to the limitations the ALJ assessed for her. (Pl.'s Br. 17). According to the DOT, these jobs have a specific vocational preparation level ("SVP") of 2. *Id.* at 18. But according to O*Net, they have an SVP of "4 to less than 6," an SVP that, according to Dunson, conflicts with the ALJ's assessed limitation. *Id.*. Dunson had the opportunity at her hearing, through her non-attorney representative, to challenge the VE on cross-examination as to whether she could perform those occupations. Her non-attorney representative did not cross-examine the VE. (Tr. 90–91). This Court's task is not to reweigh the evidence but to decide whether substantial evidence supported the ALJ's decision. *Hollis*, 837 F.2d at 1383. The ALJ relied on the testimony of the VE, based on the DOT, as is the standard practice. This ground does not require remand.

## V. CONCLUSION

The ALJ followed the correct legal standards in reaching his conclusion, and substantial evidence in the record supports the ALJ's RFC. Further, the ALJ's hypothetical question and his reliance on the VE testimony do not constitute reversible error. The Court therefore **AFFIRMS** the Commissioner's decision.

Signed March 22, 2018.

                                            _____
                                            Hal R. Ray, Jr.
                                            UNITED STATES MAGISTRATE JUDGE